# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 8, 2009                    Decided April 23, 2010

No. 08-3073

UNITED STATES OF AMERICA,
APPELLEE

v.

FRANCIS PEREZ,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00013-JR-1)

*Jenifer Wicks*, appointed by the court, argued the cause and filed the brief for appellant.

*Leslie Ann Gerardo*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roy W. McLeese III* and *Mary B. McCord*, Assistant U.S. Attorneys.

Before: GINSBURG, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Francis Perez challenges his drug convictions on two grounds. He argues the district court erred by failing to order a hearing to evaluate his competency to stand trial, and he asserts that his trial counsel's performance fell short of what is required by the Sixth Amendment. We reject both arguments and affirm his conviction.

**I.**

On September 16, 2006, officers of the Metropolitan Police Department executed a search warrant for Perez's apartment and found him washing a white, powdery substance down his kitchen sink. The police discovered two kilograms of cocaine in the kitchen sink, on plates above the kitchen cabinets, and in a bag in the bedroom closet. The search also revealed acetone (a bleaching agent to whiten cocaine), an electronic scale, and approximately $3600 in cash. The police arrested Perez, and while in custody he admitted, "[T]hose drugs were given to me by a guy, [so] that I, sell it for the guy so I could help myself with something, because I can't work." Tr. of Interview of Perez at 12 (Sept. 16, 2006).

Perez pleaded guilty to possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) (2006), and unlawful destruction, alteration, or concealment of tangible objects with intent to obstruct a federal investigation in violation of 18 U.S.C. § 1519. Pursuant to the plea agreement, Perez signed a proffer acknowledging that he had admitted his intent to sell the cocaine found in his apartment. Perez also waived the protection of Federal Rule of Evidence 410 by agreeing that his plea and the statements he made during the course of plea negotiations would be admissible against him in the event of a trial.

Against the advice of counsel, Perez moved to withdraw his guilty plea. His lawyer, who told the court the motion was ill-advised, suggested Perez had difficulty understanding "the evidence against him," Tr. at 11 (May 27, 2008), and "certain abstract concepts" such as "constructive possession and aiding and abetting," Tr. at 5, 7–8 (Jan. 24, 2008). He also speculated that Perez's desire to withdraw the plea might stem from "a lack of understanding of certain basic concepts or . . . a psychological impediment." *Id.* at 6.

For his own part, Perez remained, in the words of his counsel, "very firm" in his desire to withdraw his plea. *Id.* at 3. Perez told the court, "I was pressured into pleading guilty, and I wanted to take my case to trial. . . . I have a family, and I want to have a life with them. Six years [the low end of Perez's sentencing guideline range] will be a lot of time. . . . I know that what they found in the house was not mine. It belonged to someone else." Tr. at 12–13 (May 27, 2008). Perez also told the court he wished to withdraw his plea because the sentence under the plea would be "too much," and, in any event, the cocaine found in the apartment was not his. Tr. at 8 (Jan. 24, 2008).

The district court considered the matter during the course of three hearings before eventually granting the motion. Trial then began on May 28, 2008. Perez faced only the drug count because the government dropped the obstruction charge. The government put on evidence that the police found Perez in his apartment with cocaine, drug paraphernalia, and $3600 in cash, and that he admitted his intent to sell the drugs. The government also introduced Perez's proffer and guilty plea. Acting against his counsel's advice a second time, Perez asserted his right to testify. Just before he took the stand, Perez, frustrated by his attorney's handling of the case, asked

the court to declare a mistrial: "My attorney told me last week that he wasn't prepared for trial, that he didn't have enough evidence and that he had not prepared for a trial. I need that evidence to be shown, and he doesn't have it in his hand." Tr. at 198 (May 29, 2008). Perez wanted his attorney to put on evidence that the cash found in the apartment was from the sale of his car and that he was leasing the apartment from its owner. In response, his counsel acknowledged that Perez "expressed a great deal of dissatisfaction with the way that this case has gone. He is very upset that certain testimony and certain items of evidence that he thought would be exculpatory have not been presented." *Id.* at 195. The district court refused to declare a mistrial.

Upon taking the stand, Perez testified that the cocaine was not his, but belonged instead to the owner of the apartment, who stayed there occasionally. He stated that the drugs found on top of the kitchen cabinets could not have been his because he could not reach that high due to his leg amputation. He also maintained that the money found in the apartment came from the sale of his car. To impeach Perez's credibility, the government offered evidence that he had been arrested again for selling cocaine, even after pleading guilty in this case.

The jury found Perez guilty, and the district court sentenced him to 97 months' imprisonment and 48 months' supervised release. We have jurisdiction over his appeal under 28 U.S.C. § 1291.

## II.

Perez argues that the district court should have ordered a competency hearing. The Due Process Clause prohibits the trial of a person who lacks the mental capacity to participate

in legal proceedings. *See, e.g.*, *Pate v. Robinson*, 383 U.S. 375, 378 (1966). A criminal defendant is legally incompetent to stand trial if he lacks "a rational as well as factual understanding of the proceedings against him" or "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Drope v. Missouri*, 420 U.S. 162, 172 (1975); *see United States v. Caldwell*, 543 F.2d 1333, 1348 (D.C. Cir. 1975). In judging a defendant's competence, courts consider "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope*, 420 U.S. at 180.

In 18 U.S.C. § 4241, Congress created procedures to safeguard this right. *See Medina v. California*, 505 U.S. 437, 447 (1992) ("The Federal Government and all 50 States have adopted procedures that address the issue of a defendant's competence to stand trial. See 18 U.S.C. § 4241."); *United States v. Weissberger*, 951 F.2d 392, 395 (D.C. Cir. 1991). Section 4241(a) requires the district court, on its own motion, to order a hearing to evaluate a defendant's competency "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Perez argues that his counsel's statements questioning his understanding of the case provided such reasonable cause and that the district court therefore erred in failing to call for a competency hearing. We review the district court's failure to order a competency hearing under § 4241 for abuse of discretion, *United States v. Klat*, 156 F.3d 1258, 1263 n.3 (D.C. Cir. 1998), and find none.

Perez displayed ample understanding of "the nature and consequences of the proceedings against him." 18 U.S.C. § 4241(a). He showed a familiarity with governing legal principles. For example, he probed the evidentiary basis of the government's case by asking counsel whether the police had video tapes or audio recordings linking him to the crime. He knew it was the government's burden to prove that the cocaine belonged to him, telling the court that the government had to prove that the drugs did not belong to the owner of the apartment. He asked for a mistrial, arguing that his attorney was unprepared and had not obtained evidence that Perez thought exculpatory. He also showed a clear appreciation of the consequences of conviction when he protested that the likely sentence under his guilty plea would keep him from his family for too long.

Perez also demonstrated an ability "to assist properly in his defense." *Id.* He actively participated in every stage of the trial. He even developed his own defense by arguing that the cocaine belonged to the apartment's owner and that the money in the apartment was from the sale of his car. As both Perez and his attorney told the court, Perez discussed with his lawyer what evidence might support these arguments, and he was frustrated when it was not obtained.

Perez tries to make much of his counsel's statement that Perez might not understand the nuances of complex legal concepts. But neither the Constitution nor § 4241 requires that defendants have such legal acumen. *See Caldwell*, 543 F.2d at 1348 n.63 ("The phrase 'to assist in his defense' we have said 'does not refer to legal questions involved but to such phases of a defense as a defendant usually assists in such as accounts of the facts, names of witnesses, etc.'" (quoting *Lyles v. United States*, 254 F.2d 725, 729–30 (D.C. Cir. 1958)). Even defense counsel's vague suggestion that Perez might suffer

from "a psychological impediment," Tr. at 6 (Jan. 24, 2008), did not create reasonable cause to believe Perez was incompetent to stand trial in light of his demonstrated understanding of the proceedings and engagement with counsel before and during trial. Although Perez may have held dubious legal views and pursued an inadvisable strategy, none of this provided reasonable cause for the district court to question his competence to stand trial. As the Seventh Circuit has recognized, "'persons of unquestioned competence have espoused ludicrous legal positions,' but the articulation of unusual legal beliefs is a far cry from incompetence." *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008) (quoting *United States v. James*, 328 F.3d 953, 955 (7th Cir. 2003)).

The statements of Perez's counsel, considered along with Perez's understanding of the proceedings against him and his ability to assist counsel before and during trial, preclude reasonable cause to believe Perez was incompetent to stand trial. The district court's failure to order a competency hearing was not an abuse of discretion.

## III.

Perez argues that he was deprived of his Sixth Amendment right to effective assistance of counsel. To prevail, Perez must show his counsel's conduct was unreasonably deficient, *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. When a defendant challenges the effectiveness of his trial counsel for the first time on appeal, as Perez does here, our "general practice is to remand for an evidentiary hearing" in the district court. *United States v. Rashad*, 331 F.3d 908, 909–10 (D.C. Cir. 2003). Remand is often necessary because the trial record

reflects primarily an inquiry into the defendant's guilt or innocence, rather than counsel's performance. *See Massaro v. United States*, 538 U.S. 500, 505 (2003). Nonetheless, we have no need to remand if "'the trial record alone conclusively shows' that the defendant is or is not entitled to relief." *Rashad*, 331 F.3d at 910 (quoting *United States v. Fennell*, 53 F.3d 1296, 1303–04 (D.C. Cir. 1995)). No remand is warranted here because the record conclusively shows that Perez cannot prevail on his ineffective assistance claim.

Perez first argues his counsel should have sought a competency hearing, but we have already determined that the record shows there was no reasonable cause to believe that Perez was incompetent to stand trial. Because there was no reason for the court to believe a hearing was required, there can be no prejudice in his counsel's decision not to seek one.

Perez next takes issue with the fact that his counsel sought the exclusion of the key elements of the government's case against him—the cocaine discovered in Perez's apartment, Perez's admission that he intended to sell the drugs, and the withdrawn guilty plea—through oral, and not written motions. But oral motions to suppress are expressly authorized under Federal Rule of Criminal Procedure 47(b), which permits oral motions "made during a trial or hearing." Because the rules treat oral and written motions the same, counsel was not deficient for offering an oral motion.

Counsel's remaining alleged deficiencies, assuming they were, in fact, deficiencies, could not have affected the outcome of Perez's trial. The government's evidence linking Perez to the drugs was simply too strong. For instance, counsel's alleged failure to produce a lease without Perez's name may have bolstered Perez's defense that the drugs belonged to the apartment's owner, and evidence that Perez

had recently sold his car may have provided an alternative explanation for the cash the police found, but these are, in the end, only collateral issues. There was no "reasonable probability" that if such testimony had been presented to the jury, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## IV.

Because the district court lacked reasonable cause to order a competency hearing, and because the trial record conclusively establishes that any alleged deficiencies of counsel did not result in prejudice, the conviction is

*Affirmed*.