# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 25, 2014         Decided May 1, 2015

No. 13-3059

UNITED STATES OF AMERICA,
APPELLEE

v.

RONALD WILLIAMS,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cr-00022-1)

———

*Jonathan S. Zucker*, appointed by the court, argued the cause and filed the briefs for appellant.

*Stephen F. Rickard*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, Assistant U.S. Attorney.

Before: ROGERS, KAVANAUGH, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  A jury convicted Ronald Williams of two drug possession offenses and one drug conspiracy offense.  On appeal, Williams challenges his conspiracy conviction on sufficiency of the evidence grounds. He also contends that the District Court erred at trial by excluding certain evidence.  Finally, he raises an ineffective assistance of trial counsel claim.  We affirm the judgment of the District Court except that, consistent with this Court's ordinary practice in these circumstances, we remand the case so that the District Court may address Williams's claim of ineffective assistance of trial counsel in the first instance.

I

On September 16, 2011, an undercover police officer stationed himself outside Maurice Williams's house.  The officer observed Maurice's brother, Ronald Williams, sitting on the front porch of the house.

As the officer watched, Ronald engaged in a series of apparent drug transactions.  Three men approached the house, one after the other.  Ronald ushered each man inside for a brief visit.  After the men left the house, police followed them and recovered small bags of cocaine from two of them.  The third man swallowed what appeared to be two small bags of cocaine.

The police continued their investigation.  On October 21, 2011, an officer saw Maurice – whom the officer initially mistook for a drug buyer – exit his house and drive away. After stopping and searching Maurice's car, the officer found a substantial quantity of cocaine, marijuana, and cash.  Based on that evidence, the police obtained a search warrant for Maurice's residence.

When the officers arrived at Maurice's house, they found Ronald again sitting on the porch. One officer spoke to Ronald outside, while another officer entered the house to retrieve Ronald's keys in order to search his car. From outside, Ronald saw the officer who was looking for the keys move toward a table. Ronald called out: "Not there. Not there. It's not that table. Not there. To the left. To the left." Supplemental App. 200 (internal quotation marks omitted). Later, the police officers found drugs on the table that Ronald had been directing them away from. The officers found additional drugs, scales, and packaging materials in the house. They also found drugs in the pocket of a jacket that was Ronald's size and would have been large for Maurice. The drugs found in the house were cocaine and marijuana.

Ronald and Maurice Williams were indicted and tried together. Each was charged with one count of conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846. Ronald was also charged with two counts of distribution, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). Ronald and Maurice were each charged with two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C).

At trial, the jury found Maurice guilty of all charges. The jury acquitted Ronald on both distribution counts. The jury could not reach a verdict on the other three counts against Ronald (the conspiracy count and the two possession with intent to distribute counts). The District Court therefore declared a mistrial as to those counts. The Government then re-tried Ronald on the conspiracy count and the two possession with intent to distribute counts. At the second trial, the jury found Ronald guilty on all three counts. Ronald Williams now appeals.

4

II

On appeal, Ronald Williams argues that there was insufficient evidence to support his conspiracy conviction. (He does not make a sufficiency of the evidence argument with respect to his two convictions for possession with intent to distribute drugs.) He also contends that, during his second trial, the District Court wrongly excluded evidence that the jury in the first trial had acquitted him of the distribution counts. Finally, he claims that his trial counsel rendered ineffective assistance.

A

To convict a defendant of a drug conspiracy, the Government must prove that the defendant entered into an agreement with at least one other person to do something that violates the law. *United States v. Gaviria*, 116 F.3d 1498, 1515 (D.C. Cir. 1997). The Government must "show that the conspirators agreed on the essential nature of the plan, not that they agreed on the details of their criminal scheme." *Id.* (internal quotation marks omitted).

Ronald Williams contends that there was insufficient evidence to establish that he entered into an agreement to distribute drugs with his brother Maurice. When reviewing sufficiency claims, we generally "accept the jury's guilty verdict" if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Andrews*, 532 F.3d 900, 903 n.1 (D.C. Cir. 2008) (internal quotation marks omitted). In so doing, we view the evidence in the light most favorable to the Government. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

At his trial, Ronald Williams failed to preserve his sufficiency claim for appellate review. Williams moved for a judgment of acquittal after the Government concluded its case, but he did not renew his motion after the close of all evidence. Therefore, Williams's "exceedingly heavy burden" becomes "even heavier." *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 206 (D.C. Cir. 2013) (internal quotation marks omitted). Williams ultimately must show that upholding the conspiracy conviction would constitute "a manifest miscarriage of justice." *Id.* (internal quotation marks omitted). A manifest miscarriage of justice occurs when the record is "devoid of evidence pointing to guilt" or the "evidence on a key element of the offense was so tenuous that a conviction would be shocking." *United States v. Spinner*, 152 F.3d 950, 956 (D.C. Cir. 1998) (internal quotation marks omitted).

Applying that especially deferential standard, we conclude that the evidence suffices to show a conspiracy between Ronald and Maurice to distribute drugs.

On September 16, while the police watched, Ronald met with two individuals at Maurice's house. After the two men left the house, the police stopped them and found cocaine on them. That day, the police also observed Ronald meeting with a third man. When the police later approached that man, he appeared to swallow bags of cocaine. On October 21, moreover, Maurice was caught with dealer-level quantities of drugs after leaving his house. Then, during the search of Maurice's house on October 21, the officers found substantial quantities of cocaine, marijuana, and drug packaging materials. In addition, during that search, Ronald attempted to divert officers from a table where drugs were later found. In the house, the officers also found a jacket of Ronald's size that contained drugs.

Although the evidence is admittedly thin, a rational jury could conclude that both Ronald and Maurice knew about the substantial quantities of drugs in Maurice's house and that both Ronald and Maurice were dealing drugs from Maurice's house. Putting all of the evidence together, moreover, a rational jury could further conclude that the brothers were not coincidentally running separate operations out of Maurice's house, but rather had agreed to distribute drugs, with Maurice's house as a base of operations. *See, e.g.*, *United States v. Branham*, 515 F.3d 1268, 1273-74 (D.C. Cir. 2008); *United States v. Childress*, 58 F.3d 693, 713 (D.C. Cir. 1995); *United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C. Cir. 1991).

In short, applying the especially deferential "manifest miscarriage of justice" standard, we conclude that the record contains sufficient evidence that Ronald Williams unlawfully conspired with his brother Maurice to distribute drugs.

B

At Ronald Williams's first trial, the jury acquitted him of the two drug distribution charges and hung on the conspiracy and possession with intent to distribute counts. At his second trial on the conspiracy and possession with intent to distribute counts, the District Court excluded evidence that Williams had been acquitted on the distribution counts during the first trial. On appeal, Williams challenges that decision. We review his evidentiary claim under the deferential abuse of discretion standard. *See United States v. Bailey*, 319 F.3d 514, 517 (D.C. Cir. 2003).

The District Court did not abuse its discretion by excluding evidence of Williams's prior acquittal of other crimes. It is settled that a criminal defendant ordinarily may not introduce evidence at trial of his or her prior acquittal of

other crimes. The hearsay, relevance, and more-prejudicial-than-probative rules generally preclude the admission of evidence of such prior acquittals. *See United States v. Thomas*, 114 F.3d 228, 249-50 (D.C. Cir. 1997); *Bailey*, 319 F.3d at 518.

Faced with that legal barrier, Williams advances a narrower argument. According to Williams, evidence of his prior acquittal was relevant because he was seeking to correct mistaken speculation by the second jury that he had previously been convicted of distribution. Evidence about the status of a defendant's other criminal charges may be relevant where the jury otherwise would reasonably think that the defendant had previously been convicted of the other offenses. *See Bailey*, 319 F.3d at 518 ("We think that if the jury inference is plausible, evidence to rebut that inference is relevant.").

But here, the District Court and the parties took great pains to conceal the first trial from the second jury. The distribution charges from the first trial were not mentioned in the jury's presence. So there was no mistaken speculation to correct. Williams notes that a police officer testified that drugs seized from one of the alleged *buyers* no longer existed because "once the case is resolved, due to limited storage space, all narcotics are destroyed." App. 87. In addition, the parties stipulated that drugs seized from another alleged *buyer* were "destroyed pursuant to Metropolitan Police Department's evidence retention guidelines." *Id.* at 107. According to Williams, those references to a "resolved" case and "destroyed" drugs may have confused the jury into thinking that he had already been arrested, tried, and convicted of another drug crime. But Williams's theory stretches too far, particularly when reviewed under the deferential abuse of discretion standard. After all, Williams's

case obviously had not been resolved in its entirety, given that he was the defendant in the then-ongoing trial. Under an abuse of discretion standard, his theory is unconvincing: The logical inference for the jury to draw from those snippets of evidence was that any cases against the drug *buyers* had been resolved.

In short, the District Court did not abuse its discretion by excluding evidence of Williams's prior acquittal on the drug distribution counts.

## C

We turn next to Williams's claim that his trial counsel was ineffective. He alleges that his counsel failed to provide effective assistance during pre-trial plea negotiations and at trial. Consistent with this Court's practice in these circumstances, we remand to the District Court so that it may consider the claim in the first instance.

To make out a case of ineffective assistance, a defendant must present "factual allegations that, if true, would establish a violation" of the Sixth Amendment right to counsel. *United States v. Mohammed*, 693 F.3d 192, 202 (D.C. Cir. 2012) (internal quotation marks omitted). The defendant "must show not only that counsel's performance was deficient, but that he suffered prejudice as a result." *United States v. Solofa*, 745 F.3d 1226, 1229 (D.C. Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

This Court allows defendants to raise ineffective assistance claims on direct appeal, as well as in collateral proceedings. But as the Supreme Court has stated, ineffective assistance claims "ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of

representation during an entire trial." *Massaro v. United States*, 538 U.S. 500, 505 (2003); *see United States v. Bell*, 708 F.3d 223, 225 (D.C. Cir. 2013). Therefore, our typical practice on direct appeal is to remand "colorable" claims of ineffective assistance to the district court without first substantially analyzing the merits. *See Mohammed*, 693 F.3d at 202. Although we do not "reflexively remand," we also do not "hesitate to remand when a trial record is insufficient to assess the full circumstances and rationales informing the strategic decisions of trial counsel." *Id.* (internal quotation marks omitted).

Applying those standards, we remand here so that the District Court may consider Williams's ineffective assistance of counsel claims. Williams alleges that his counsel was ineffective in pre-trial plea negotiations and at trial. Before Williams's second trial, the Government extended a favorable plea offer. Williams now contends that his counsel did not convey that offer to him until the first day of trial, after the offer had expired. He also claims that his counsel incorrectly explained how his career offender status might affect his sentencing exposure. Had Williams received proper advice, he says, he would never have risked a trial. On top of that, Williams also alleges that his counsel erred in several respects at trial, including by failing to move for acquittal at the close of evidence, failing to impeach a witness, and failing to make certain evidentiary arguments.

A court cannot meaningfully assess those claims without first hearing from Williams's trial counsel. Without evidence from trial counsel, we cannot know what actually happened or the reasons behind the trial counsel's decisions. On some occasions, even without evidence from trial counsel, we can determine that there was no possibility of prejudice from the allegedly deficient performance. In such cases, we therefore

may affirm rather than remand because a remand would serve no purpose. *See United States v. Pole*, 741 F.3d 120, 126-27 (D.C. Cir. 2013). But this is not such a case. Therefore, the proper course of action for us here is to remand and "allow the district court to address the claims – and the government's responses – in the first instance." *Id.* at 127.

\* \* \*

We affirm the judgment of the District Court except that, consistent with this Court's ordinary practice in these circumstances, we remand the case so that the District Court may address Williams's claim of ineffective assistance of counsel in the first instance.

*So ordered.*